# THE STATE v. HARRY A. FAULKNER, Appellant.

### Division Two, January 31, 1905.*

1. **COMPETENCY OF JUDGE: Former Appeal: No Record of Ruling.** Where the bill of exceptions and record preserved no action of the trial court in reference to appellant's motion suggesting that the trial judge was incompetent to afford defendant a fair trial, the ruling in that regard is not open to review on appeal. The fact that on a former appeal the record contained the motion and disclosed the ruling of the court in reference thereto, will not avail defendant on this appeal. The motion should be renewed in the trial court when the case is remanded for new trial, or must be disregarded on second appeal.

2. **INDICTMENT: Without Evidence: Perjury: Competent Witnesses.** Members of a grand jury are not competent witnesses to prove that the indictment was presented without the production of any competent evidence on which to base it. If there was no evidence presented to the grand jury to sustain the indictment, defendant's plea in abatement should be sustained; but that plea must be supported by evidence, and members of the grand jury are not competent witnesses on the point.

3. **———: Testimony of Defendant: Perjury.** A plea in abatement to an indictment for perjury based on the false testimony of defendant when subpoenaed before the grand jury in another case, although one with which he was shown by the testimony in the case on trial to have been connected, is not to be sustained on the ground that the indictment was based on the testimony of defendant. It was not his testimony in reference to the charge of perjury upon which the perjury charged is based, but his false testimony in connection with the other case then being investigated.

4. **———: ———: ———: Plea In Abatement.** Where a grand jury was making a proper and legitimate inquiry, and defendant appeared as a witness and failed to claim his privilege not to testify on the ground that his testimony would incriminate him, but falsely testified, a plea in abatement to a subsequent indictment charging him with perjury should be overruled.

5. **CHANGE OF VENUE: Discretion.** Where the evidence does not show that the court abused its discretion in denying the

---

*Decided December 13, 1904; motion for rehearing filed; motion overruled January 31, 1905.

State v. Faulkner.

defendant a change of venue on the ground that the inhabitants of the county were prejudiced against him, the Supreme Court will not interfere.

6.  **JURORS: Prejudice.** A venireman who testifies that his friendship and association with the brother of defendant will influence him in reaching a conclusion in the case, should be excused from sitting as a juror. The State, as well as the defendant, is entitled to an impartial jury.

7.  **PERJURY: Accomplice.** Where the fact is made manifest to the jury that much of the testimony relied upon to support a conviction consists of evidence detailed by accomplices in the commission of an offense equally as serious as the one with which the defendant is charged, the Supreme Court will allow that jury to determine their credibility, and will not set aside the verdict on the ground that it is not supported by the evidence.

8.  **INSTRUCTION: Useless Words.** A judgment should not be reversed because of the use of words in an instruction which are wholly useless and inapplicable to the case. Where defendant was indicted for falsely swearing before a grand jury that he did not know that $75,000 had been put up in a trust company to be paid to a combine of nineteen members of a legislative assembly on the passage of a bill giving to a street railway a certain franchise, and the evidence clearly shows that the agreement was made through one of the members and the fact announced to the rest in the month of November, 1900, that part of an instruction which required the jury to find that the defendant was a member of such legislative assembly "during the month of January, 1902," was wholly inapplicable to the case, was a useless addition thereto, and could not have misled the jury.

Appeal from St. Louis City Circuit Court.—*Hon. Walter B. Douglas*, Judge.

AFFIRMED.

*Chas. P. Johnson* and *T. J. Rowe* for appellant.

(1) The Hon. Walter B. Douglas was incompetent to try this case. Sec. 2594, R. S. 1899; State v. Lehman, 182 Mo. 424; Goddard v. Delaney, 181 Mo. 564; sec.

38, p. 2541, R. S. 1899; sec. 8, p. 2535, R. S. 1899; secs. 26, 27, p. 2538, R. S. 1899; secs. 832, 4157, 4160, R. S. 1899; State v. Greenwade, 72 Mo. 298; State v. Thompson, 141 Mo. 408; State v. Callaway, 154 Mo. 91; State v. Anderson, 96 Mo. 241; State v. Tatlow, 136 Mo. 678. (2) Defendant's plea in abatement should have been sustained. The grand jurors before whom defendant testified could not return an indictment against him. It is contrary to both the letter and spirit of American law to permit the witnesses against a party to sit in judgment on his case. The jurors who returned the indictment were all witnesses against defendant. Secs. 3768, 2486, 2487, 2508, 2514, R. S. 1899; U. S. v. Edgerton, 80 Fed. 374. (3) The plea in abatement should be sustained because the record herein shows that there was no evidence before the grand jury upon which to return the indictment. (4) A change of venue should have been granted defendant. The evidence conclusively established the fact that the inhabitants of the city of St. Louis were so prejudiced against defendant that he could not obtain a fair trial. (5) The verdict is against the overwhelming weight of the evidence and is the result of bias, prejudice and passion. (6) The instructions offered by defendant should have been given, and the action of the court in refusing to give same was prejudicial error. (7) The third instruction given by the court is erroneous. It does not properly define the words "know" or "knowledge." It is erroneous because there is no evidence in the case tending to prove that defendant and John K. Murrell were members of the House of Delegates during the year 1901, and during the month of January, 1902. Defendant and Murrell were elected members of the House of Delegates in April, 1899, for a term of two years, and their respective terms expired in April, 1901. (8) The second instruction given by the court is erroneous because not bottomed upon evidence. (9) The court erred in sustaining the State's

challenges to jurors Bushnell, Daub and Dauerheim. (10) Defendant could not be guilty of perjury because he was compelled by the grand jury to testify against himself. State v. Faulkner, 175 Mo. 546; U. S. v. Edgerton, 80 Fed. 374; Mackin v. People, 115 Ill. 312; Boyd v. United States, 116 U. S. 631; Pipes v. State, 26 Tex. App. 318; State v. Gardiner, 92 N. W. 533; Ex parte Carter, 166 Mo. 604.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1) Defendant's counsel insist that the plea in abatement should have been sustained by the trial court. This plea is based upon the proposition that inasmuch as defendant had been subpoenaed as a witness to appear before the grand jury at the city of St. Louis, and did so appear and testify, he could not afterwards be indicted by that or any other grand jury upon matters concerning which he had been questioned by that tribunal. It will be observed that defendant admits in his plea in abatement that he was a material witness before the grand jury, but it is, however, asserted by him that, contrary to the Constitution of this State and the letter and spirit of the law, this indictment was found and presented by said grand jury, by reason of his own testimony before said body, and that this indictment is bottomed upon the testimony which defendant was compelled to give against himself in violation of the Constitution of the State of Missouri. In this connection, we remind counsel for the defendant of the fact that defendant was summoned as a witness before said grand jury to speak the truth of and concerning his information and knowledge of the object and purpose of the deposit of seventy-five thousand dollars in the Lincoln Trust Company, and of and concerning the fact that that money had been put up for the purpose of securing the passage of what

is known as Council bill No. 44. The indictment here
does not charge defendant with having committed the
crime of bribery. It does not charge him with the com-
mission of any crime or offense about which he was
questioned while before the grand jury. It does, how-
ever, charge that he violated his oath, in that he testi-
fied falsely to material facts of and concerning the
matters then under investigation by the proper auth-
orities. Not one of the authorities which defendant
cites in support of his position in this respect can be
relied upon as rendering substantial aid to his conten-
tion. Necessarily, the latitude of the grand jury is ex-
tensive. They have a right to inquire for evidence from
any source they see fit and to establish a charge, link
by link, and are entitled to true answers. In this con-
nection, however, we call the court's attention to the
language of the Supreme Court of the State of Illinois
in the case of Macklin v. People, 115 Ill. 312. U. S.
v. Brown, 24 Fed. Cas. 1273; U. S. v. McCarthy, 21
Blatchf. 469. Defendant had the right either to testify
truthfully or to assert his constitutional privilege and
refuse to speak, because of the fact that it might in-
criminate him. All the authorities are a unit upon the
proposition that, where the witness declines or fails
to take the benefit of the privilege and voluntarily testi-
fies falsely, he may be indicted by the grand jury be-
fore whom he has so falsely testified, and convicted of
the crime of perjury. If it be true, as charged by
counsel for appellant, that a prosecution cannot be had
under the circumstances shown in this case, then the
grand jury is deprived of the power which has here-
tofore been recognized as being rightfully lodged in
it. Common sense leads us to believe that it is as
essential for the grand jury to have the right to indict
a person who has willfully testified falsely before it up-
on material matters under investigation as has any
court the right to punish for contempt committed in its
presence. The very fact that the defendant may be

guilty of some offense closely connected with the subject-matter about which he was examined when testifying falsely does not deprive the grand jury of its right to demand and receive from a witness the absolute truth, and there is only one instance in which a witness may refrain from telling the truth, and that is by closing his lips and standing upon the constitutional privilege that, if he should speak, he might incriminate himself. This, under the decisions, is the only exception, and to vary from this rule would, in a sense, strike down and destroy the province of the grand jury. The evidence shows that there was a number of witnesses in reference to the Suburban bill. These witnesses went before the grand jury and testified along with the defendant, so that it is not true, as asserted by defendant in the plea in abatement, that no witnesses appeared before the grand jury and gave evidence upon which to base an indictment. (2) The action of the trial court in passing upon applications for a change of venue will not be disturbed unless it be shown that some injury has been inflicted upon defendant or upon the complaining party, or that the trial court has acted corruptly and arbitrarily and without due regard for the wise and considerate discretion that is lodged within his breast. State v. Clevenger, 156 Mo. 194; State v. Tatlow, 136 Mo. 678; State v. Dyer, 139 Mo. 199. The presumption is always in favor of the ruling of the trial court, and in order to justify a reversal, it devolves upon the defendant to show that the overruling of his application for a change of venue operated as a denial of justice. State v. Tatlow, 136 Mo. 682. (3) The State is as much entitled to an impartial jury as the defendant, and is no more bound to submit its case to a juror who is predetermined than is the defendant. State v. Miller, 157 Mo. 76. (4) Where the regular judge has been disqualified and another judge called in to try the case,

this latter judge cannot be disqualified. State v. Greenwade, 72 Mo. 298.

FOX, J.—On February 1, 1902, there was filed in the circuit court of the city of St. Louis for criminal causes, a true bill wherein the defendant was charged with perjury. The perjury is charged to have been committed before the grand jurors impaneled for the December term, 1901, said grand jurors being the same grand jurors who returned this indictment against the defendant. The indictment is reproduced in full in State v. Faulkner, 175 Mo. 546; hence there is no necessity to repeat it here; it will suffice to briefly state the essential elements of the offense described in it.

The indictment alleges that Phillip Stock, on or about November, 30, 1900, in the presence of John K. Murrell, deposited in a box in the vault of the Lincoln Trust Company $75,000, with the understanding between Stock and Murrell that when Council bill 44, which was then pending in the Municipal Assembly of the city of St. Louis, passed the House of Delegates and Council of said city, and was signed by the Mayor, the said sum of $75,000 would be turned over to Murrell for his benefit and the benefit of other members of the House of Delegates, which he claimed to represent. That defendant was a member of the House of Delegates. That the grand jurors were investigating that subject, and defendant was called before them to testify as a witness, and was duly sworn by the foreman of the grand jury, and that it was material to the issue whether defendant had any knowledge of the existence of said $75,000 and the purposes for which it was to be applied; and that he then and there did feloniously, falsely, corruptly, knowingly, willfully and maliciously depose and swear in substance and to the effect following: that he did not know nor had he ever heard of the existence of said $75,000, whereas, in truth and in fact, he then and there well knew of the exist-

ence of said $75,000 and that it was deposited in a box in the safe deposit vault of the Lincoln Trust Company, as a bribe, to be paid said Murrell and other members of the House of Delegates, whom he claimed to represent, to influence their votes for and in favor of the passage of said ordinance, and that on January 31, 1902, in the manner and form aforesaid defendant feloniously, falsely, knowingly, willfully and corruptly committed willful and corrupt perjury.

This cause was assigned to Division No. 9 of said circuit court, and the Hon. O'Neill Ryan was the judge of the court. That the Hon. Walter B. Douglas was the judge of Division 8 of said court. That on June 3, 1902, defendant filed a motion in Division 9 suggesting that Judges Ryan and Douglas were disqualified to try the cause. Judge Ryan sustained the motion in part, and overruled it in part, and transferred the case to Division 8 of said court. Defendant on July 14, 1902, filed his motion in Division 8, suggesting that Judge Douglas was disqualified to try this case, which said motion was on the same day overruled.

On July 23, 1903, defendant filed his plea in abatement as follows: And the said Harry A. Faulkner, in his own proper person, comes into court here, and, having heard the said indictment read, says:

"That on or about January 31, 1902, he was summoned as a witness to appear before the grand jurors of the State of Missouri, within and for the body of the city of St. Louis, summoned and impaneled for the December term, 1901, of the circuit court of the city of St. Louis, then and there to testify, and the truth to say in a certain case pending before said body, wherein the State of Missouri was plaintiff and he was defendant, wherein he was charged with a violation of section 2085, page 593, Revised Statutes 1899; that this defendant on or about January 31, 1902, appearing before said grand jurors, summoned and impaneled as aforesaid, and in direct and positive violation of sec-

tion 23, article 2, of the Constitution of Missouri—'No person shall be compelled to testify against himself in a criminal cause'—and directly in violation of all rules of honor, honesty and decency, without the aid of counsel and without advise as to his guaranteed constitutional right, and without warning or admonition, and by the exercise on the part of the representative of the State of an inquisitorial process, was required and compelled by said grand jurors to testify against himself.

"Defendant says that he was a material witness before said grand jurors, and that, contrary to the Constitution of this State and the letter and spirit of the law, this indictment was found and presented by said grand jurors by reason of his own testimony before said body, and that this indictment is bottomed on the testimony which defendant was compelled to give against himself, in violation of the Constitution of Missouri.

"Defendant further says that he was examined as a witness on January 31, 1902, by said grand jurors, who afterwards, on February 1, 1902, the last day of the December term, 1902, of the circuit court of the city of St. Louis, without hearing any testimony or evidence after his examination, as aforesaid, on January 31, 1902, and without hearing any evidence on the charge of perjury, and only on their own knowledge and information, presented this indictment for perjury based upon the testimony which he gave before them on January 31, 1902. That no legal evidence was heard by said grand jurors, in direct and positive violation of section 2489, page 665, Revised Statutes 1899.

"Defendant further says that neither William H. Lee, foreman of said grand jury, nor John Dutro, nor any other grand juror, was sworn as a witness upon the hearing and investigation of the charge of perjury against the defendant, as required by section

2514, page 668, Revised Statutes 1899, and that there was no hearing or investigation before said grand jurors of the charge of perjury against this defendant.

"That thereby defendant was denied the equal protection of the law, in violation of section 1 of the 14th amendment to the Constitution of the United States.

"That the array of grand jurors who presented defendant were both his accusers and his judges, in violation of the law, and he was, in violation of the 14th amendment to the Constitution, denied an opportunity to challenge the array, which he should have had by virtue of the provisions of sections 2487 and 2488, page 665, Revised Statutes 1899, and that by reason thereof he has been denied the equal protection of the law.

"Defendant says that in violation of section 2517, Revised Statutes 1899, his name is not indorsed upon said indictment as a witness.

"Defendant says he is ready to verify the foregoing, wherefore he prays judgment of said indictment, and that the same may be quashed."

This plea in abatement was by the court overruled.

The trial proceeded, and the testimony tended to show the following state of facts:

That the grand jury of the city of St. Louis had under investigation the question as to whether or not certain members of the House of Delegates and City Council of the city of St. Louis had been guilty of bribery, in connection with Council bill No. 44, which had been pending before the Municipal Assembly of the city of St. Louis and which had previously passed the House of Delegates. This bill was afterwards passed by both branches of the legislative department of the city government and signed by the mayor. Evidence was presented to the grand jury which showed that seventy-five thousand dollars had been deposited in a safety deposit box at the Lincoln Trust Company, to be

turned over to certain members of the legislative department of the city government, in the event of the passage of said Council bill No. 44 and its being signed by the mayor.

Defendant was subpoenaed as a witness before the grand jury, and there testified that he knew nothing of the $75,000, which had been so deposited, save and except as to newspaper rumor, but then recently published. The fact was, as is shown by the evidence, that defendant was a member of the House of Delegates, during the pendency of said Council bill No. 44, and belonged to the combination of members composed of the following named persons: Edmund Bersch, Otto Schumacher, John A. Sheridan, Charles J. Denny, Adolph Madera, John H. Schnettler, Emile Hartmann, Charles A. Gutke, Louis Decker, Edward E. Murrell, John K. Murrell, T. E. Albright, John Helms, Julius Lehman, Charles F. Kelly, Jeremiah J. Hannigan, William M. Tamblyn, Harry A. Faulkner and George F. Robertson, the object of said combination being to control municipal legislation in a corrupt manner by demanding and receiving from certain corporate interests certain sums of money to be from time to time agreed upon, for the passage of such legislation as might be deemed essential to the welfare of such corporate interests. The members of the combination held meetings in the committee rooms adjoining the chamber of the House of Delegates. The first meeting, perhaps, was held sometime before the bill above referred to was introduced in the Council, and the question then came up as to how much the members of the combine should receive for their votes. Edward E. Murrell, chairman of the House of Delegates, at that time presided over the meeting of the combine. The defendant was present and suggested that the nineteen members so constituting the combine demand the sum of one hundred thousand dollars for the passage of the bill. Various members expressed themselves as to the

amount of money that should be received in this con-
nection, ranging from one hundred thousand to sixty
thousand dollars.  The matter was put to a vote of the
members and it was upon this vote decided that sev-
enty-five thousand dollars should be fixed as the price
the members of the House of Delegates should demand.

John K. Murrell was elected, or, rather, selected,
by this combination as their agent to negotiate the deal
with the proper parties.  He was instructed to see the
representatives of the Suburban Railway Company
and secure their agreement to pay seventy-five thous-
and dollars, part to be paid the night the bill should
pass the House of Delegates and the remainder to be
paid after the bill should become a law.  Murrell sub-
sequently saw Philip Stock, the legislative agent of
the Suburban Railway Company, which company was
interested in the passage of the bill in question.  The
proposition was put to Stock by Murrell.  Stock re-
fused to consider it, saying that the people that he
represented would not put up that amount, meaning
the officers of the Suburban Railway Company.  Mur-
rell afterwards made a report to the combine, the de-
fendant being present.  Murrell reported that he had
seen Stock and the question came up between the two
as to what the combine would do with reference to the
bill.  It was finally concluded by the members that
they would accept Stock's proposition to have the
seventy-five thousand dollars placed in a safety deposit
box in some trust company, to be paid after the bill be-
came a law, the defendant being present and taking part
in the discussion.  Murrell then went to see Stock
again and Stock secured the seventy-five thousand dol-
lars from the German Savings Institution, where ar-
rangements had been previously made by the president
of the Suburban Railway Company, Mr. Charles H.
Turner, and Stock and Murrell went to the Lincoln
Trust Company and rented lock box number 132,
where the money was counted out in the presence of

Murrell and deposited or placed in the lock box, Murrell retaining one key and Stock the other, the arrangement being made that as soon as the bill had passed both houses and was signed by the mayor the box should be opened and the money turned over to Murrell for himself and the other eighteen members of the combine, including this defendant. Immediately after that another meeting was held, in which Murrell explained his actions in the premises. The defendant was again present and took part in the proceedings and heard the report made by Murrell. The evidence tends to show that at the time the defendant was brought before the grand jury then and there the truth to tell in reference to this transaction, he well knew all the circumstances in connection with the deposit of the seventy-five thousand dollars in the Lincoln Trust Company and the purpose for which the deposit was made.

The stenographer for the grand jury, before whom this offense is charged to have been committed, testified that the questions and answers of defendant before the grand jury were substantially as follows:

"Q. What do you know about this seventy-five thousand dollar deposit in the Lincoln Trust Company for the House of Delegates, after the passage of the Suburban bill? A. I know nothing except what I read in the newspapers.

"Q. You mean you had never heard of it until you saw it in the paper? A. No, sir.

"Q. Have you heard of it since you saw it in the papers? A. I heard it talked in the street cars, and in fact, several people have spoken to me about it.

"Q. You never heard of this seventy-five thousand dollars referred to directly or indirectly by any member of the House of Delegates or any one else until you saw it in the papers? A. No, sir, I never heard of it.

"Q. You never knew from your own information

or any information you obtained that there was any money up for the passage of that bill? A. No, sir."

And under date of January 31, 1902, defendant testified before the grand jury as follows:

"Q. Now, I will ask you whether or not at any time you had knowledge either of your own or from any information from others, that there was any sum of money put up to secure the passage of the bill known as the Suburban Railway bill? A. No, sir.

"Q. Either of your own knowledge or from what any other person has told you? A. No, sir.

"Q. You mean to state positively that prior to these publications in the Star two weeks ago, that you knew nothing from your own knowledge or other information, regarding any money put up to secure the passage of the Suburban bill? A. I saw something in the papers two or three weeks ago. There was a little item.

"Q. What paper? A. Just a little sketch.

"Q. You mean to say prior to three or four weeks ago? A. Yes, sir.

"Q. That you had no knowledge or information regarding the putting up of any money to secure the passage of the Suburban bill for the use of the members of the House of Delegates for that purpose. A. I knew nothing about it.

"Q. Never heard of it? A. No, sir; not for a money consideration. I knew the bill was before us.

"Q. You never heard of the fact that there was any money up to go to any member or members of the House of Delegates in the case of the passage of the Suburban bill, prior to three or four weeks ago, when you saw it in the papers? A. No, sir; I never heard of it.

"Q. You state that positively? A. Yes, sir."

Witness John K. Murrell for the State, testified concerning the main facts, substantially as follows:

I was a member of the House of Delegates in 1900

and 1901. I represented the Fourteenth ward. I was
a member at the time Council bill 44 was pending.
While this bill was pending there was an association
of the members of the House of Delegates formed in
connection with the bill. There were nineteen of them.
It was called the combine. It was composed of mem-
bers Bersch, Schumacher, Sheridan, Denny, Hartmann,
Schnettler, Madera, Gutke, Decker, E. E. Murrell, J. K.
Murrell, E. T. Albright, Helms, Lehman, Kelly, Han-
nigan, Tamblyn, Robertson and Faulkner, the defend-
ant. There were several meetings held with reference
to this bill. The first was held in the House of Del-
egates chamber in the retiring room at the south end
of the hall. There was a single door between this room
and the room occupied by the House of Delegates. The
door was shut; as a general rule, it was locked when
anything was going on. All of these gentlemen that
I have just mentioned as constituting the members of
the combine were present at the first meeting, including
the defendant. At the first meeting there was a sug-
gestion made by Gutke that some one should be placed
on the bill to see what could be gotten out of it for
the members of the combine. Helms was nominated
and I was nominated. Helms declined and I was ap-
pointed then to see who was back of the bill. The first
price set by the combine to pass the bill was seventy-
five thousand dollars. Various prices, however, were
suggested—one hundred thousand, sixty thousand, and
seventy-five thousand. Faulkner and Kelly and Bersch
wanted one hundred thousand dollars; the majority,
however, decided on seventy-five thousand. I then, as
a member of the combine, went to see Mr. Stock and
I asked what proposition he had to make. He said his
people would pay just about sixty thousand to pass
the bill, and I told him the least we wanted was seventy-
five thousand dollars; one thousand dollars especially
to each member; that we wanted one thousand dollars
each of the seventy-five thousand the night after the

bill passed the House of Delegates, and the balance when it became a law. He, however, refused to accept this proposition and said he would do nothing of the kind. I reported back to the combine at a meeting held by them in the retiring room in the House of Delegates. The defendant Faulkner was there. I reported that he was willing to pay sixty thousand dollars for the passage of the bill; that they would not accept the proposition that we had given them. I went and asked Stock if he wanted to see me to telephone me. Possibly four or five weeks afterwards, I heard of Stock that he wanted to see me. I went down and he said that he saw his people, and that they were willing to pay seventy-five thousand dollars, but would not pay the money the night of the passage of the bill in the House; they would pay the seventy-five thousand dollars when it became a law. I reported back to the members of the combine at a meeting held in the retiring room of the House, the defendant being present. I reported that Stock said they were willing to pay seventy-five thousand dollars after the bill became a law, and in the meantime the seventy-five thousand dollars was to be placed in a trust company. The members of the combine afterwards agreed to accept the proposition. The defendant was present. In the presence of the defendant I was instructed by the combine to go back and say to Stock that we would accept his proposition. I went back and saw him and told him, and when I left he said he would let me know in a day or so, that he would be ready for me; along about the twenty-fourth day of November, he telephoned me to come down, that he was ready. I went down and met him at the Lincoln Trust Building and we placed the money in a deposit box. I counted it. There was seventy-five thousand dollars. There were two keys to the box. Stock held one and I held the other. This box was to be opened after the bill became a law. The money was then to be divided up among the members of the com-

bine; each one was to receive his part. Both Stock and I had to be present at the opening of the box. The password at the trust company was "carriage."

The testimony of witness John K. Murrell was, as to the main features of it, corroborated by witnesses Edward E. Murrell, Tamblyn, Robertson, Helms and Schumacher.

Formal proof was made as to the organization of the Municipal Assembly, the administration of the proper oath to the members of it, including the defendant, and the pendency of Council bill No. 44. A number of witnesses were introduced and testified that defendant's reputation for truth and veracity, in the neighborhood in which he resided, was good.

At the close of the testimony, defendant requested the court to instruct the jury as follows:

"The jurors are instructed that unless they believe from all the evidence in the case beyond a reasonable doubt that defendant prior to January 31, 1902, and before he testified before the grand jurors, was told by John K. Murrell or by some other person who had personal knowledge that he, said Murrell, and Philip Stock had deposited $75,000 in the Lincoln Trust Company for the purpose of influencing any member or members of the House of Delegates of the city of St. Louis, for vote or votes or influence of such member or members in the passage of Council bill No. 44, then it is your duty to acquit the defendant; and the court further instructs you in this connection that personal knowledge is not knowledge derived from gossip, rumor or hearsay, but is knowledge one derives from the exercise of his own senses, and that in this case unless defendant saw Philip Stock or John K. Murrell, or either of them deposit $75,000 in the Lincoln Trust Company, or unless John K. Murrell or Philip Stock told defendant, or that some person associated with defendant who had personal knowledge told defendant,

that said Stock and Murrell had deposited $75,000 in the Lincoln Trust Company prior to January 31, 1902, then defendant had, in law, no knowledge of any deposits of $75,000 in the Lincoln Trust Company, and it is your duty to acquit him.

"The jurors are instructed that unless they believe from all the evidence in the case beyond a reasonable doubt that defendant prior to January 31, 1902, and before he testified before the grand jurors, was told by John K. Murrell that he and Philip Stock had deposited $75,000 in the Lincoln Trust Company, for the purpose of influencing any member or members of the House of Delegates of the city of St. Louis, for vote or votes or influence of such member or members in the passage of Council bill No. 44, then it is your duty to acquit the defendant; and the court further instructs you in this connection that personal knowledge is not knowledge derived from gossip, rumor or hearsay, but is knowledge one derives from the exercise of his own senses, and that in this case, unless defendant saw Philip Stock or John K. Murrell, or either of them deposit $75,000 in the Lincoln Trust Company, or unless John K. Murrell or Philip Stock told defendant that they had deposited $75,000 in the Lincoln Trust Company prior to January 31, 1902, then defendant had, in law, no knowledge of any deposit of $75,000 in the Lincoln Trust Company, and it is your duty to acquit him."

This request of defendant was denied, and the action of the court in its refusal to give the instruction prayed for, was duly excepted to and is properly preserved in the record before us. The complaints of appellant to instructions given by the court will be given attention in the course of the opinion.

Upon the submission of this cause to the jury, they returned a verdict of guilty, and assessed defendant's punishment at imprisonment in the penitentiary for a term of three years.

Motions for new trial and in arrest of judgment were filed, and by the court overruled. From the judgment of sentence upon the verdict rendered, defendant in due time and proper form prosecuted his appeal to this court, and the cause is now before us for consideration.

## OPINION.

This cause was in judgment before this court upon a former appeal (State v. Faulkner, 175 Mo. 546), and it is apparent from the record before us that the trial court, in this proceeding, has endeavored to dispose of the case in accordance with the views expressed in the opinion upon the prior appeal.

It is well, at the very inception of the consideration of the propositions disclosed by the record, which are involved in this cause, to first ascertain the questions that were settled upon the first appeal. We see no reason for departing from the principles announced or the conclusions reached in this case, when it was first presented to this court. GANTT, J., after a careful and painstaking investigation of the vital questions involved upon the former appeal in this case, clearly and correctly settled the law upon those questions. The facts disclosing the history of the subject being investigated by the grand jurors, were substantially the same upon both appeals.

It is appropriate here to note what was said in that case. Upon the question as to the province or the right of the grand jury to make the investigation which was made, it was said: "It was then the duty and the right of the grand jury who were investigating the charge of bribery against Murrell to send for defendant and inquire of him if he had any knowledge or information of the existence of said sum of seventy-five thousand dollars, which it was reported that Murrell had agreed should be paid to him to secure the passage of said bill No. 44. Any knowledge or information pos-

sessed by him concerning 'the existence of such fund and the purposes for which it was to be used,' was material to the inquiry the grand jury was then making. 'It was the natural and orderly way in which the grand jury would ascertain the material facts upon which to base an indictment or to refuse to find one. It was their sworn duty to obtain the legal evidence, to ascertain the witnesses by whom the charge could be substantiated and to indorse their names on the indictment, not alone for the benefit of the prosecuting attorney, but for the protection of the person charged in the indictment in the preparation of his defense. This inquiry and the defendant's answer, taken in connection with the allegations of the indictment, disclose the materiality of the question and answer to the inquiry then being made.''

Upon the proposition as to the materiality of defendant's knowledge of the matters about which the grand jury was making inquiry, the further conclusion was announced upon the first appeal: ''That a witness subpoenaed before a grand jury and interrogated as to his knowledge of a crime alleged to have been committed in the county in which the grand jury is lawfully impaneled may commit perjury by falsely swearing that he did not know of the commission of such crime, or any material fact constituting a link in the chain of evidence necessary to establish such offense, is now too well settled to admit of a doubt.''

And after reviewing fully the authorities upon the subject, this final conclusion was announced in that case: ''In the light of all these rulings it can not be doubted that if defendant in fact did falsely testify before the grand jury as charged in the indictment that he did not know of nor had he ever heard of the existence of the $75,000 deposited in the Lincoln Trust Company to bribe certain members of the House of Delegates, when in truth and in fact he did know of

the said money and the purpose for which it was to be used, he was guilty of perjury.''

With these important, underlying principles involved in this case settled, it eliminates the discussion of them, as well as the necessity for doing so, and leaves remaining for solution the propositions suggested in the brief of learned counsel for appellant.

We will consider those questions in the order indicated in the assignment of errors urged in the brief before us.

It is first insisted that Judge Douglas, who presided at the trial in this cause, was incompetent to try the case. This contention is doubtless predicated upon the action of the court on July 14, 1902, at which time defendant's motion requesting the court to make an order declaring that the judge of said court was incompetent to try said cause, for the reason that he would not afford defendant a fair trial, was overruled. It will suffice to say upon that contention, that an examination of the record under review, discloses that the error complained of, if in fact erroneous, is not preserved in the bill of exceptions in this cause. The two trials of this cause must not be confused, they are separate and distinct, and this court would not be warranted in reviewing complaints of error applicable to the former appeal, unless the same matters were presented to the court upon the trial now being reviewed, and the adverse ruling duly preserved in the bill of exceptions in this cause.

The record does not disclose any action upon the motion in which it was sought to disqualify the judge who presided at the trial of this cause, upon the trial of the cause now before the court for review. This motion was no part of the record proper, and could only be made so by the presentation of it, and the preservation of the adverse action of the court upon it, with the objections and exceptions, by a duly signed bill of exceptions. The stipulation of counsel in this cause,

to supply omissions in the record, does not remedy the difficulty confronting us in this cause. This stipulation simply contains the record entries upon the motion to disqualify the judge, made prior to the first trial. This would not change the condition of the record, for as before stated, the presentation of the motion, with the objections and exceptions to the adverse action of the court upon it, must be preserved by the bill of exceptions in this trial, and not by mere recitations in the record as to the action of the court upon the motion.

It is next insisted that defendant's plea in abatement should have been sustained, and the court's action in overruling the same is urged as error.

The first ground urged in the plea of abatement is that defendant was compelled to testify against himself. The disclosures of the record do not support that allegation. This proposition was fully discussed in the opinion of this court upon the first appeal; all the authorities were carefully reviewed and it can serve no useful purpose to repeat what was said in that exhaustive review of the authorities upon the subject. It will suffice to state the conclusions. The principles extracted from a careful analysis of the adjudicated cases, as well as the text-books treating of this subject, were thus stated in that case: "First, that the witness can not be compelled to criminate himself; second, that it is his personal privilege to decline to testify, and he may voluntarily waive it; third, that if compelled to testify after arrested or before arrest before a coroner's jury, after he is suspected, his admissions are not voluntary and can not be used against him on a subsequent trial for that offense—and such is the force of State v. Young, 119 Mo. 517."

Those principles were applied to the facts disclosed by the record, and the final conclusion was announced. It was said: "In our opinion, because a court requires a witness even erroneously to testify to a matter which he is justified in refusing to answer, is no ground for

charging the court with having compelled him to testify to that which is false. It may be and is wrong to require him to testify to the truth if it would incriminate him, but it can not be said, that merely because it wrongfully requires him to answer, it compels him to testify falsely. If he answers truthfully he can not be punished for perjury, and, as already said, he has two modes of redress if called upon to testify to that which is privileged. He may decline and claim his privilege and have his redress by habeas corpus, if imprisoned, or if he yields and saves his exceptions, he can appeal and have the judgment reversed, as is often done. In this case he made no claim of privilege, and it is everywhere ruled that this is a personal privilege which he may waive and must be held to have waived when he voluntarily answers without objecting to it that it would incriminate him. [State v. Douglass, 1 Mo. 527, and cases cited.]''

It is next urged in the plea, that the indictment in this cause was presented without having any testimony upon which to base the finding. If this was true, it furnished sufficient ground for sustaining defendant's plea. [State v. Grady, 84 Mo. 224.] However, this allegation in order to be availing, must be supported by competent proof. Error is assigned upon the action of the court in the rejection of testimony offered by defendant in support of this allegation. The testimony to which this assignment of error is directed, is that of members of the grand jury, to whom questions were propounded touching their knowledge of the testimony introduced before them, upon which this indictment was predicated. The action of the court in excluding the testimony of members of the grand jury, finds full support in the announcement by this court of the rule upon that subject. The rule and the reason for its adoption is very aptly stated by BURGESS, J., in State v. Johnson, 115 Mo. l. c. 489 and 490. It was thus stated:

"Grand juries, for their own protection, and that they may be independent and efficient in the discharge of their duties, are sworn to secrecy, and if the sanctity of their room can be invaded and they be required to testify as to what occurred therein, and what influences. were exerted to induce them to prefer indictments, the obligation thus administered would be a mere idle ceremony. While it should not be used as a means of persecution, yet our laws are such that no one can be prosecuted and punished in this State for a felony as such without first having been indicted by a grand jury, let the crime be ever so enormous or wherever it may be committed. We do not contend that grand jurors may not be sworn as witnesses in regard to infractions of the law which occur in their room or presence, but we do hold that they are incompetent to testify in regard to their own actions and as to what induced them to find the indictment in this case. A similar question was before this court in the case of State v. Baker, 20 Mo. 339, and it was held that 'members of the grand jury can not under our statute be permitted to testify how they or their fellow-members did or did not vote, for the purpose of showing that twelve did not concur in finding the indictment, nor would they, it seems, be permitted to state the fact that twelve did not concur.' This case was cited with approval in the case of State v. Grady, 84 Mo. 224." To the same effect is State v. Cole, 145 Mo. 672.

The indictment in this cause was returned and presented to the court in the usual manner of presenting indictments, with the names of certain witnesses indorsed upon it, and the presumption must be indulged that the indictment was found in the manner indicated by the law, and this presumption is sufficient to support the regularity of the finding of the indictment, until rebutted by satisfactory evidence.

A careful consideration of the evidence as disclosed by the record, upon the hearing of the plea in

abatement, fails to convince us that the indictment was returned without any hearing of any evidence upon which to base it. In this inquiry it must be remembered that the question involved is not as to the sufficiency of the evidence authorizing the finding of the indictment, or that there may have been incompetent testimony heard; of that, the grand jury were the judges; but the question is, whether they had before them any evidence at all. [State v. Grady, supra.] This subject was fully presented to the Supreme Court of Illinois, in Mackin v. People, 115 Ill. 312, and in our opinion correctly answered by that court. It meets so fully the averments in the plea in the case at bar, that what is there said may very appropriately be applied to the question now under consideration. The proposition was thus dealt with by that court:

"The point has been elaborately argued that the grand jury had no rightful authority, under the statute, to find an indictment, or to make presentment for perjury, upon information of their own body, nor unless upon the testimony of two witnesses. There is nothing in this record to show how the indictment in this case was found—whether upon the information of the grand jurors themselves, or after hearing testimony of two or more witnesses, or after any testimony at all. The presumption, however, will be indulged in that the indictment was found in the manner the law directs.

"There is yet another objection of much the same character. It is assumed, as a matter of law, that where a defendant is required by the grand jury to testify touching a criminal charge against him pending before them, and in pursuance of that request does testify before them touching such charge, and where an indictment for such an offense is returned by the grand jury against him, it will be set aside, and it is sought to apply the rule stated to the defense being made. This can not be done. Whether the proposition stated embodies a correct principle of law or not, no opinion

need be expressed, for the reason, if correct, it can have no application to the present case. The perjury assigned is not upon any testimony given before the grand jury touching any charge then pending against defendant. No complaint had been made by any one against him. Nor had the court instructed the grand jury to investigate any charge against him. The grand jury had been charged by the court to investigate and inquire touching certain election matters arising out of a certain election held on November 4, 1884, and it was upon that inquiry that defendant gave the testimony upon which the perjury is assigned. It was no more an investigation of a criminal charge against defendant than it was against the printers or engravers who did the work on the tickets or ballots, all of whom testified freely and fully before the same grand jury, and against whom it does not appear any indictments were found for perjury or for any other offense. Complaint is made that the defendant was asked the direct question whether he ordered the spurious ballots, and whether he received them after they had been engraved or printed. Doubtless the same questions in substance were asked of the printers and the engraver, all of whom answered without hesitation what connection they had had with them. Had defendant been guiltless of any criminal use to be made of such ballots thereafter, he could have answered as freely as did the other witnesses, and no one would have pretended any charge against him was being inquired into by the grand jury. Assuming answers to the question propounded to defendant would have disclosed criminal conduct on his part, it was his privilege to decline to answer, and his refusal could not have been made the basis of any prosecution against him. Of course no one can be compelled to give evidence against himself, and the law secures to a person testifying in a legal proceeding, whether before a grand jury or in a trial court, the privilege of answering or of declining to an-

swer, if, in his opinion, the answer to the question would tend to disclose matters that might criminate him. The privilege secured is, however, a personal one, and if he shall waive it, and elect to testify, he must do so with as much truth and candor as if testifying concerning other matters as to which he is bound to answer, and if his testimony is willfully false, perjury may be assigned.''

Learned counsel for appellant direct our attention to the case of United States v. Edgerton, 80 Fed. 374, as supporting the contention that the plea in abatement should be sustained. That case was fully reviewed when this cause was before this court upon the first appeal, and in discussing the questions involved it was said:

''This is a case in the district court of Montana. The decision was made on a motion to quash an indictment, first, because one Flynn, an expert witness, was permitted to remain in the grand jury room and hear the testimony of other witnesses and examine them; second, because, while investigating the offense for which the defendant was indicted, he was called as a witness before the grand jury to testify as to that offense, without being informed or knowing that his own conduct was the subject under inquiry. The court quashed the indictment on both grounds and for other reasons also it would appear. While not the opinion of a court of last resort, the case appears to have been well decided. It is in line certainly with the reasoning upon which the other cases cited depend. It is intolerable that one whose conduct is being investigated for the purpose of fixing on him a criminal charge should, in view of our constitutional mandate, be summoned to testify against himself and furnish evidence upon which he may be indicted. It is a plain violation both of the letter and spirit of our organic law. Such a practice can not be too strongly condemned and scrupulously avoided by those entrusted with the administra-

tion of the criminal law, but it is obvious at a glance that this case, like all others cited, does not meet the question before us.''

It is also urged in this plea that the indictment was based upon the testimony of the defendant. In a sense, that is true, for there could be no such thing as an indictment for perjury before the grand jury of a witness, without his testimony constituting one of the essential features of the indictment; but it is not his testimony in respect to the offense of perjury, for which he is indicted, but the testimony given by him upon the subject undergoing investigation before the grand jury.

The record in this cause discloses that the grand jury were making a proper and legitimate inquiry upon the subject which is fully charged in the indictment, and if defendant was subpoenaed as a witness to testify upon such subject, there was one of two courses open to him to adopt. If his answers tended to incriminate him, he could refuse to respond to the question, or he could waive such personal privilege and testify truthfully as to his knowledge of the matter under investigation. If he waived his personal privilege and then testified falsely upon the inquisition being made, and it was material, the responsibility for the results of such criminal conduct must rest with him. The plea in abatement was properly overruled.

Defendant's application for a change of venue was overruled, and the action of the court in denying such application is assigned as error. Upon this proposition, the record discloses that the trial had proceeded, and some twenty jurors had been examined on their *voir dire* and found qualified, before this application was filed or called to the attention of the court. It might very appropriately and correctly be said that the presentation of this application was untimely, for the reason that the trial of the cause had begun. [State v. Lehman, 182 Mo. l. c. 442.] However, the court heard

the testimony, and upon such hearing, denied the application.

"The granting of a change of venue in a criminal case rests largely in the discretion of the trial court, and this court will not interfere in the absence of a showing that such discretion has been abused." [State v. Clevenger, 156 Mo. l. c. 194; State v. Tatlow, 136 Mo. 678; State v. Dyer, 139 Mo. 199.]

After a full and careful consideration of the immense volume of testimony upon this application, we are unwilling to say that the evidence would warrant us in holding that the discretion of the court, in denying the motion, was abused.

There was no error in the refusal of the instructions requested by defendant. We can not sanction the narrow limit in which the jury were confined by the refused instructions, in finding that the defendant had knowledge of the subject under investigation. We might correctly say, as was said in this case, 175 Mo. l. c. 603: That "this instruction, so far as it goes, is correct, but as the State was proceeding on the theory of a conspiracy, the instruction should have gone further and stated the further alternative, 'or that defendant at and prior to the deposit of said $75,000 by said Stock and Murrell was and had been a member of a criminal conspiracy or combine to obtain said sum under an agreement with said Stock in consideration of their votes to pass said Suburban ordinance, and that said Murrell was also a member thereof, in which case, if they so find, the defendant would be chargeable with knowledge of the acts of said Murrell and of the knowledge possessed by said Murrell during the continuance of and in furtherance of said unlawful conspiracy.' "

The instruction given by the court upon this subject was correct, and fully advised the jury as to the state of facts which would warrant the conclusion that

defendant was chargeable with knowledge of the subject being investigated by the grand jury.

Instruction numbered 2, which is complained of, given by the court, was a proper declaration of law upon the duty, as well as the right, of the grand jury to make the investigation which was made, and the further direction that the knowledge of any witness brought before them touching the subject of inquiry and the testimony concerning such knowledge, was material, meets with our approval.

It is insisted that the trial court erred in sustaining the challenge of the State to jurors Bushnell, Daub and Dauerheim. Upon this proposition, we have examined the record at the pages indicated by counsel for defendant, and fail to find any reference to challenges made, or any ruling of the court upon the same in respect to jurors Bushnell and Dauerheim. The contention must therefore be treated as applicable alone to juror Daub. It is sufficient to say upon this complaint that the questions and answers by this juror upon his examination as to his qualifications indicated very clearly that he was biased by his associations, and he is certainly to be commended for his honesty, manhood and courage in making the frank statement that he thought his friendship and association with the brother of the defendant would influence him in reaching a conclusion in the case. The answers of the juror to the questions propounded furnish the answer to the contention of defendant, and that is that the court was fully warranted in sustaining the State's challenge to this juror. The State, as well as the defendant, is entitled to an impartial jury, to which the issues are to be submitted. There was no error in the action of the court in excusing the juror from service in this cause.

It is urged that the failure of the court to rebuke the counsel for the State for improper remarks to the jury, constitute reversible error. It is only necessary

to say upon that question that we have carefully considered the remarks complained of, and while we do not hesitate to say that prosecuting officers best serve the State by confining themselves in argument in criminal cases to the facts developed upon the trial, and a fair discussion of the law applicable to such facts; yet we are of the opinion that the remarks in this case were not of that character as to endanger a fair and dispassionate consideration of the issues involved, as well as the testimony introduced in support of them.

This leads us to the consideration of the only remaining question presented by counsel for appellant, that is, that the verdict is not supported by the evidence. If the testimony of the witnesses for the State is to be believed, there can be no dispute that the finding of the jury is fully supported. It is true, the record discloses that much of the testimony relied upon to support this conviction consists of evidence detailed by accomplices in the commission of an offense equally as serious as the one with which the defendant is charged, yet that fact was made manifest to the triers of the fact.

Speaking for myself, I agree with counsel for appellant that little confidence should be placed in the statements of such witnesses; yet from an early period in the history of our jurisprudence, this court, as well as courts in other jurisdictions, have deemed it the safer rule to allow the jury to determine their credibility and the weight to be attached to their testimony.

We are unwilling to unsettle this rule that has been so uniformly followed in the trial of criminal causes. It follows, from what has been said, that it was specially the province of the jury in this case to pass upon the credibility of the witnesses and the weight to be attached to their testimony. Doubtless the jury applied the usual tests to the witnesses, considered their character as well as their conduct and manner upon the stand; it is at least presumably true

that they did this, and having done so, it is not the province of this court to retry this cause upon the facts disclosed by the record.

The underlying principles upon which this prosecution is based, were settled upon the first appeal. The jury have settled the facts as applicable to the cause and returned their verdict of guilty, and finding no reversible error in the trial by the lower court, the judgment should be affirmed, and it is so ordered.

*Gantt, P. J.,* concurs; *Burgess, J.,* absent.

December 13, 1904.

## ON MOTION FOR REHEARING.

PER CURIAM:—It is urged by the defendant that in our foregoing opinion in this case [handed down on the thirteenth of December, 1904], we overlooked the eighth point made by defendant in his brief, to-wit, that "the second instruction given by the court is erroneous because not bottomed upon the evidence." That instruction was in these words:

"If you believe and find from the evidence that at the city of St. Louis, State of Missouri, and within three years next prior to the thirty-first day of January, 1902, there was pending in the Municipal Assembly of the city of St. Louis, a certain ordinance (known as Council bill No. 44) by which it was proposed to grant certain rights, privileges and franchises to the St. Louis and Suburban Railway Company, a railroad corporation; that one John K. Murrell was at that time a member of the said House of Delegates, being one of the branches of said Municipal Assembly; that said John K. Murrell for himself and other persons, members of said Municipal Assembly, made any agreement or understanding with Philip Stock as the representative or agent of the St. Louis and Suburban Railway Company that the sum of $75,000 should be deposited in a box of the Lincoln Trust Company in said city

of St. Louis in the joint names of said John K. Murrell and Philip Stock with the understanding between them that upon the said ordinance being passed by the said House of Delegates, the City Council, and signed by the Mayor, said sum should be turned over to the said John K. Murrell for the use and benefit of himself and other members of the House of Delegates; that it was the right and duty of the grand jury of the city of St. Louis at the December Term, 1901, of the circuit court, city of St. Louis, to diligently inquire concerning said matter and to cause to come before them and to examine under oath any and all persons who might have knowledge of said matter and such knowledge and the testimony concerning the same was material to the issue and to such investigation."

That the record shows such an ordinance was pending in said Municipal Assembly within the three years prior to the finding of the indictment in this case was shown by the journal of the Council produced and identified by George F. Mockler, the secretary of said Council, showing the pendency of the said bill or ordinance No. 44 on October 9, 1900, and by Joseph N. Judge, clerk of the House of Delegates, showing its pendency therein in the years 1900 and 1901.

The testimony of John K. Murrell and Philip Stock showed beyond peradventure that said Murrell and the defendant Faulkner were members of the House of Delegates during the years 1900 and up to April, 1901. These witnesses testified in full and in particular to the corrupt bargain between Murrell as the representative of himself and the criminal combine, including defendant on the one part and Stock as the representative and agent of the Suburban Railroad. These facts established, it followed as a necessary conclusion that it was the right and duty of the grand jury to diligently inquire and examine under oath all persons who might have knowledge of said criminal com-

pact and such knowledge was material to their investigation. So plainly was this instruction based upon evidence 'that it was not thought necessary to dwell upon the pertinency of this instruction numbered 2.

The objection to it now urged that it was not bottomed upon evidence is clearly without merit.

But the motion for rehearing discloses that as a matter of fact it is based not upon the giving of instruction numbered 2, but the giving of instruction numbered 3, which is in words and figures following:

"Third. By the words 'know' and 'knowledge' as used in the indictment and in these instructions, is not meant certain knowledge or knowledge obtained by the sense of sight only; the words are used in their common and ordinary meaning.

"And if you believe from the evidence that the facts are that during the latter part of the year 1900, during the year 1901, and during the month of January, 1902, the defendant was a member of the House of Delegates of the city of St. Louis; that at said times one John K. Murrell was also a member of said House of Delegates; that the defendant and said Murrell and other members of said House of Delegates formed an association or combine, and that the members of such association or combine at a meeting at which defendant was present and participating, agreed to demand the sum of $75,000 as a bribe to secure the votes of the members of such association or combine in favor of the passage by said House of Delegates of the said ordinance known as the Suburban Bill or Council bill No. 44; that at such meeting said John K. Murrell was selected by the members of such association or combine to represent them in soliciting and arranging for such bribe; that said John K. Murrell acting for such combine did make an agreement with one Philip Stock, representing the St. Louis and Suburban Railway Company, whereby the sum of $75,000 was deposited in the safe deposit vaults of the Lincoln Trust

Company as such bribe to be turned over to the said John K. Murrell, upon the passage of said ordinance by the said House of Delegates and by the City Council of the city of St. Louis, and its signature by the mayor of said city; and that the defendant, prior to the time when he testified before the grand jury learned from the said John K. Murrell, or from any other member of the said combine, that the said $75,000 was so deposited, then you are warranted in finding from the evidence that the defendant did know at the time he so testified of the existence of the sum of $75,000 deposited in the Lincoln Trust Company as aforesaid, and did know the purpose for which it was so deposited.''

The point made against this instruction is that ''there was absolutely no evidence in the case to base instructions numbered 2 and 3 upon, because the only evidence on the question of fact as to when defendant and John K. Murrell were members of the House of Delegates is that their terms of office expired in April, 1901,'' and that under it ''defendant could have been found guilty by the jury if they believed from the evidence defendant and Murrell were members of the House of Delegates from April, 1901, to February, 1902, and during that time formed an association or combine.''

. The evident object and purpose of instruction numbered 3 was to advise the jury what constituted ''knowledge'' of said bribery combine and the deposit of said $75,000 referred to in instruction numbered 2. The argument is based upon the following clause in instruction 3: ''And if the jury believe from the evidence that the facts are that during the latter part of the year 1900, during the year 1901 and *during the month of January,* 1902, the defendant was a member of the House of Delegates of the city of St. Louis.'' Conceding, and it is true, that the evidence did not show that Murrell and defendant were members of the House

of Delegates and that there was no evidence even tending to prove they were after April 1, 1901, members of said House, did the addition of the words, "and during the month of January, 1902," render the instruction vicious? The argument is that defendant could have been found guilty if they believed from the evidence defendant and Murrell were members of the House of Delegates from April, 1901, to February, 1902, and during that time formed an association or combine. But it is conceded there was not a word of evidence that they were members of the House of Delegates after April 1, 1901, and as the jury were instructed they must find first that they were members of such House, and that while they were such members entered into the criminal combine, and as the whole instruction outside of the clause "and during the month of January, 1902," refers only to the time while defendant and Murrell and their confederates were members of the House, it is not even a supposable case that the jury based its verdict on any action taken by defendant and Murrell towards demanding the $75,000 bribe to secure the votes of said combine and appointing Murrell to represent the combine in soliciting and receiving said bribe or that the jury could for one moment have found that Murrell and Stock made their agreement and deposited the $75,000 after April 1, 1901, when Stock and Murrell both testified they deposited the $75,000 on the twenty-third or twenty-fourth of November, 1900, when defendant and Murrell were both members of the House of Delegates, and Murrell testified that he reported the fact that the $75,000 was deposited in the Trust Company to the combine at Schnettler's Hall a few days later. Under the circumstances the useless and inexplicable addition of the words "during January, 1902," to the instruction could not have misled any juror of ordinary intelligence and caused him to believe that the agreement to bribe and the deposit of

the $75,000 was made after April, 1901. This is too obvious for serious consideration.

## II.

As to the other ground of this motion, that we failed to notice Judge Douglas was incompetent to try the cause by reason of the application for a change of venue at the July term, 1902, we need only refer to the fact that this point was fully considered and disposed of in the opinion filed in this cause on December 13, 1904. It is not pretended that when this cause came on for retrial in July, 1903, after reversal on the former appeal any application for a change of venue on account of the prejudice of Judge Douglas was renewed.

That the instructions were not a comment on the evidence is clear from the fact that the jury were required to find every essential fact upon which a conviction could be based.