**STATE of Missouri, Respondent,**

v.

**James E. JOHNSON, Appellant.**

No. 56182.

Supreme Court of Missouri, Division No. 2.

Dec. 13, 1971.

Motion for Rehearing or to Transfer to Court En Banc Denied Jan. 10, 1972.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Smith & Askinosie, Springfield, for appellant.

BARRETT, Commissioner.

A jury found James E. Johnson guilty of manslaughter and fixed his punishment at five years' imprisonment. This is the background of the charge and conviction: William Edward Peters, age 45, James E. Johnson, age 31, and Phyllis Yvonne Deel, age 36, all resided in the vicinity of St. Albans, West Virginia. They were all alcoholics. In March 1970 they were going to Hawthorne, California, to see Phyllis' ill mother. They were traveling in Bill's 1959 Ford automobile with the agreement that Phyllis was to pay the expenses. And before they left St. Albans on Wednesday, March 11, 1970, Phyllis gave Johnson $300.00 in cash. Bill and Johnson had been drinking "approximately two weeks" and they started out with two fifths of bourbon, "Rocking Chair." The first night out the three of them stayed in a motel "the other side of St. Louis." The second day, all drinking on the way, they arrived at the Bell Motel on Kearney Street in Springfield, Missouri, and rented units 11 and 12. The registration card for one unit read "Mr. and Mrs. J. G. Johnson, 3115 Huntington Drive, Columbus, Ohio." Johnson introduced Peters as "his Uncle Bill."

On the second day of the trip, Bill driving, Johnson and Phyllis had an argument and with his closed fist Johnson, "hit her in the mouth and mashed her mouth. That's the only trouble we had." In his autopsy report a pathologist described this particular injury as a "hemorrhage of the lower lip."

After registering into the motel Phyllis protested that she did not want to get out of the automobile and refused to do so. Johnson, despite an injured leg, dragged Phyllis out of the automobile and, his hands under her armpits, dragged her into room 12. Bill immediately went to the bathroom in room 12, from his position there he could not see into the room but he could hear Johnson and Phyllis arguing and cursing and then "I heard something that sounded like a slap, and they were arguing." Shortly Johnson, who was dating Phyllis, announced that he was going next door to unit 11 and get some sleep. Bill and Phyllis had another drink or two, undressed and went to bed, Phyllis complaining of a headache. About 6 o'clock the next morning Johnson came into unit 12 and awakened Bill, they had some drinks and Phyllis "raised upon her elbow and asked for a drink" but on Johnson's signal Bill did not give her a drink and in a few minutes Phyllis "laid there snoring." Soon she stopped snoring and when he got out of bed he looked at Phyllis "and her eyes were wide open" and could not be closed. He listened to her chest and to Johnson said, "For God's sake, get an ambulance. This woman's dead." An ambulance was called and Phyllis was pronounced dead on arrival in the hospital emergency room.

In this court appellant makes two related points both directed to the proposition that the evidence "would not permit a jury to find defendant guilty as charged beyond a reasonable doubt without resorting to speculation, conjecture and guess." The related and subsidiary contention is that the state's evidence (the defendant Johnson offered no evidence) failed to prove that Phyllis "died from a mortal wound or blow inflicted upon deceased by defendant, this being an essential element of state's case."

■ In the second contention the appellant rather ingeniously argues in great detail the facts of the autopsy, the numerous abrasions and injuries to Phyllis and says that there was no proof of a connection

between the cause of death, a subdural hematoma, and a certain bruise on the forehead. As stated, Phyllis was an alcoholic and the autopsy revealed that she was intoxicated when she died and so the appellant argues that her "fatty metamorphosis of the liver" caused by alcoholism was a contributing factor and "hastened death." Alcoholism and sodden drunkenness may indeed have been a contributing factor in Phyllis' death, as the doctor explained, but if so it was the appellant's misfortune to have assaulted a person whose death would be accelerated due to her physical condition, it is as if he had struck a hemophiliac "one moderate blow with his fist" and "the injury accelerated the death from the disease." State v. Frazier, 339 Mo. 966, 98 S.W.2d 707, 712–713; State v. Cooley, Mo., 387 S.W.2d 544.

■ The pathologist after describing "numerous bruises of the skin of the body" said that an examination of Phyllis' head "revealed a bruise of the skin of the right side of the forehead, there were two bruises of the left side of the chin, and there was a hemorrhage of the lower lip." He then described these injuries "one by one" and of the bruise on the right side of the forehead said that it was one to two centimeters or between one-third and two-thirds of an inch in diameter. He was of the opinion that these particular bruises were about twelve hours old. An examination of her brain "revealed a right subdural hematoma" caused by "the extravasation or escape of blood into the subdural space. * * * There was a blood clot on the surface of the brain between the layers over it." Beneath the blood clot there was the arachnoid layer of the meninges and below that the cerebral cortex. "The blood clot occupied or covered a surface of the brain (indicating) *which would correspond to the frontal parietal and a little bit of the occipital region and right cerebral hemisphere.*" The blood clot of 190 cc's weighed about six ounces. The doctor said that the clot pushing down herniated the cerebral cortex—"this being technically re-ferred to as herniation of this cingulate gyrus." He said that the effect of the clot "per se" would be "loss of consciousness, slowing of pulse rate and some alteration of respiratory rate." Positively, the doctor said, "(t)he hemorrhage is almost always caused by trauma" and that some bleeding may occur immediately. In this case he determined that the clot was less than thirty-six hours old. As a result of his autopsy and "to a reasonable medical certainty" the pathologist said, "the cause of death of Phyllis Yvonne Deel was a right subdural hematoma" and "(i)t was in my opinion very likely of traumatic origin." Thus the cause of Phyllis' death was observed and determined by autopsy—by the doctor's examination and observation and thus there were no exceptional circumstances or occasion for hypothetical questions and opinions, 40 Am.Jur.2d (Homicide) §§ 398–399, pp. 655–657. Compare State v. Lusk, Mo., 452 S.W.2d 219.

■ Bill heard Johnson and Phyllis arguing and cursing and he heard what sounded "like a slap." After Johnson left room 12 Bill noticed something about Phyllis' head that was not there earlier: "I noticed Phyllis had a knot on her right forehead." He was pointing to "an area between the eye brow and hairline on the right side of your own forehead." At the same moment Phyllis complained "Bill, I've got a headache." He was positive in his testimony that the "lump" on her forehead was not there before and she had not fallen and struck her head on a hard surface and she had not fallen from the automobile. Then there were these additional incriminating and corroborating circumstances as the jury could and did find them: Before the ambulance arrived "Jim said (to Bill), 'Don't panic. When the police get here, tell them she fell out of the car.'" After Johnson's arrest a deputy-sheriff felt that he was doing him a favor to let him know what was transpiring and went to the jail and told him what the autopsy revealed and he said, "I didn't hit her that hard. I just slapped her to try to

make her stop her yelling." These detailed circumstances admit of the inferences and finding that the appellant Johnson struck Phyllis, that she died as a result of the blow and there is present all the elements of manslaughter. RSMo 1969, § 559.070, V.A.M.S.; State v. Sykes, Mo., 436 S.W. 2d 32; State v. Cooley, supra, and State v. Frazier, supra. Accordingly the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.