STATE of Missouri, Respondent,

v.

John Madison BRAME, Jr., Appellant.

No. KCD 28195.

Missouri Court of Appeals, Kansas City District.

Oct. 12, 1976.

R. Lin Alexander, Marshall, for appellant.

John C. Danforth, Atty. Gen., Robert L. Presson, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

Defendant was charged by information with stealing three blank checks and three watches, those items having an aggregate value in excess of $50. The jury found defendant guilty but was unable to agree on punishment. The trial court fixed punishment at 10 years and entered judgment thereon, from which defendant appeals.

The conviction was based entirely upon circumstantial evidence. The State's primary witness, Arthur E. Ozias, is defendant's uncle by marriage. Defendant's 91 year old grandmother, who is also Ozias' mother-in-law, lived with Ozias. Defendant occasionally visited his grandmother at the Ozias home. On the date in question, January 15, 1975, Ozias had left for work at approximately 8:00 a. m., leaving his mother-in-law at the house. Since Ozias' wife was away on a trip, Ozias returned home several times during the day to check on his mother-in-law, one of such visits being about noon, and Ozias left again about 1:00. At that time, everything was as usual.

Ozias again returned to the house about 2:30 to 3:00. He observed defendant and a companion leave the house hastily as he arrived. This was the first time Ozias had seen the defendant for "quite some time." When Ozias went to his bedroom, he found the dresser drawers open and various items disturbed. He discovered that three watches and two rings were missing from his bedroom. Items in two other rooms of the house had also been disturbed, and Ozias testified that he specifically remembered seeing one of the watches earlier that morning. The testimony revealed that defendant's grandmother was down the street at a neighbor's and was not in the house at the time that Ozias arrived and defendant left. The total value of the items stolen, according to Ozias, was approximately $475, and the watches specifically were worth $350. The theft was reported to the police.

Two days later, on January 17, defendant was arrested for a traffic violation while driving a car with two companions as passengers. A search of the car revealed three checks of Ozias' company beneath a floor mat in the front seat. When the police notified Ozias, he ascertained the checks to have been taken from the Ozias Electric Company checkbook which had been in Ozias' house on January 15. None of the other items stolen in the course of the burglary were ever located. The three checks taken from the Ozias Electric Company checkbook were not the top three, and Ozias could not affirmatively state that the checks were taken on January 15. There was also testimony that the checkbook was stored alternately at the home and the office of Ozias. There was no specific testimony as to the value of the checks, although the prosecutor commented that they were probably worth "thirty cents or so." The checks when found by the police had been filled in to show as payees certain individuals who are related to defendant by marriage.

### I.

Defendant's Points Relied On numbers 1, 2 and 5 all object to Instruction No. 4. Construing those points liberally in favor of defendant, they present the following issues: a) The information charged a theft on January 15, 1975, but Instruction No. 4 submitted to the jury the question of whether defendant committed theft on June 15, 1975. Based on this discrepancy defendant argues that the verdict was beyond the information and the evidence; b) Defendant argues that the evidence was insufficient to prove any theft by defendant, regardless of date.

With respect to the discrepancy of dates, it must be observed that all the evidence related to events on January 15, 1975, and during the two or three days immediately thereafter. There was no reference during the trial of any kind to June 15. The substitution of June 15 for January 15 in the Instruction was quite obviously a clerical mistake which could not possibly have misled the jury. The error in date here has no more significance than the error in dates in *State v. Shipley*, 232 S.W.2d 515 (Mo.1950), which was held to be nonprejudicial.

A similar error of dates was held nonprejudicial in *Woods v. State*, 139 Tex.Cr.R. 631, 141 S.W.2d 318 (1940), where the information charged a violation on June 5, 1939, but the instruction referred to acts done on June 5, 1909. The court held:

"This mistaken date is so palpably a typographical error we feel sure it could have had no influence upon this jury, who certainly knew from the evidence that this man was being tried for an offense said to have been committed on June 5, 1939."

So also in *Howe v. Commonwealth*, 462 S.W.2d 935, 938 (Ky.App.1971), a similar discrepancy in dates was held immaterial. The indictment stated January 22 as the date of events, while the instruction referred to February 22. The court held this discrepancy to be nonprejudicial:

"Dates were not in issue and the testimony referred to the correct date of the crime. We are of the opinion that the error in the date did not affect the substantial rights of the accused and that he was not prejudiced by this inadvertent mistake."

■ Turning to the alleged insufficiency of the evidence, that question also must be ruled against defendant. His possession of the recently stolen checks, when stopped by the police on January 17, was a sufficient premise from which the jury could infer that he was the thief. *State v. Sallee,* 436 S.W.2d 246, 250 (Mo.1969); *State v. Nichols,* 130 S.W.2d 485, 486 (Mo.1939). Moreover, his possession of that portion of the loot permits the inference that he was the thief who stole it all. *State v. Burrage,* 418 S.W.2d 101, 106 (Mo.1967); *State v. Weaver,* 56 S.W.2d 25, 26 (Mo.1932); *State v. Beatty,* 90 Mo. 143, 2 S.W. 215, 216 (1886).

■ Defendant calls attention to the fact that two other individuals were in the automobile with him at the time defendant was stopped on the street by the police. He argues that defendant was simply in joint possession with those other occupants and that in the case of joint possession of stolen property, no inference can be drawn that any particular one of the possessors was the thief in the absence of additional facts and circumstances connecting the defendant with the theft. *State v. Pruett,* 522 S.W.2d 823 (Mo.App.1975). Such additional facts and circumstances do exist here by reason of the fact that defendant was the driver of the automobile (as contrasted to being merely a passenger), he was present at the scene of the theft during the very short interval during which the theft occurred from the Ozias home, and the stolen checks were filled in with the names of payees who were defendant's relatives. The evidence in this case was sufficient to warrant submission to the jury.

## II.

■ Defendant's Point 3 alleges: "The Court erred in permitting the State to comment upon Defendant's refusal to testify, in as much as the Prosecuting Attorney commented during his closing argument that Defendant had failed to offer any evidence to contradict the State's evidence, when in fact, the Defendant had offered such evidence; the Prosecuting Attorney thereby clearly refering [sic] to. Defendant's failure to testify." This Point presents nothing for review for the reason that the argument by the prosecuting attorney, of which complaint is made, has not been included in the transcript on appeal. *State v. Taylor,* 486 S.W.2d 239 (Mo.1972); *State v. Pryor,* 525 S.W.2d 413 (Mo.App.1975).

Moreover, any comment by the prosecuting attorney, if it was as set forth in defendant's Point, was not reversibly erroneous. *State v. Armbruster,* Missouri Court of Appeals, Springfield District, No. 10080, decided September 10, 1976, and authorities cited at page 9 of the slip opinion. *State v. Hudson,* 508 S.W.2d 707 (Mo.App.1974), cited by defendant in this regard, is not to the contrary.

## III.

■ Defendant's Point 4 complains that the trial court erred in permitting the testimony of witnesses not endorsed on the information. The record shows that is not quite what happened. The State did ask leave at the beginning of the trial to endorse four additional witnesses who had not theretofore been named as witnesses to be called. The trial court did grant the permission sought with respect to three of those witnesses, all of whom had testified at the preliminary hearing. This action was permissible and did not constitute error. *State v. Minnix,* 503 S.W.2d 70 (Mo. App.1973).

## IV.

For his final Point, defendant contends that the trial court erred in failing to instruct the jury on the lesser offense of stealing property of a value less than $50. In support of that contention defendant argues that the time of the theft of the three checks could not be definitely pinpointed as having occurred at the same time as the theft of the watches and rings and that inasmuch as the checks were the only items found in defendant's possession, the jury could have found that the checks were all that defendant actually stole. If so, by concession of the prosecuting attor-

ney the value of the checks was less than $50 and the trial court would have been bound to instruct on theft of property less than $50 in value, which constitutes a lesser included offense. *State v. McCarthy,* 336 S.W.2d 411 (Mo.1960).

 The flaw in defendant's argument is that there was no evidence that the checks were stolen at any different time or place from when and where the watches and rings were stolen, and any finding that the checks were stolen at a different time or place would be so unreasonable as to defy common sense. Ozias testified that he had changed his checkbook on the first of the year; so, these checks in question had only been in existence for 17 days before they were found by the police hidden in defendant's car. Those checks had been in Ozias' home only two days previously when a theft had occurred, and until the date of that theft Ozias had not seen defendant for "quite some time." There was no evidence that defendant ever had been in the Ozias Electric Company office or that he had ever had access to the company checkbook at any place or at any time except at the Ozias home during the early afternoon of January 15, 1975.

Still further, the theft occurred during the very short period of one and one-half to two hours between the time that Ozias visited his home between noon and 1:00 and the time that he came back and found his home in disarray at about 2:30 to 3:00 o'clock. There was no evidence that anyone else was in the house during that very brief period other than the grandmother, defendant, and his unidentified companion.

Under these circumstances the only reasonable conclusion is that all of the items were taken at the same time. That being true, the taking of all of the items constituted one theft. *State v. Weaver,* 56 S.W.2d 25, 26 (Mo.1932). The only evidence in the case was that the property stolen had a value in the aggregate of over $50. For that reason, an instruction on the lesser included offense was not required. As held in *State v. Burrage, supra:* "There was no evidence to justify a finding that the prop-

erty taken was of a value of less than $50.00. Under those circumstances, the trial court was not required to instruct on stealing of property of value less than $50.00." To the same effect: *State v. Knicker,* 366 S.W.2d 400, 403 (Mo.1963).

Affirmed.

All concur.