STATE of Missouri,
Plaintiff-Respondent,

v.

David McBURNETT,
Defendant-Appellant.

No. 48842.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 28, 1985.

Motion for Rehearing and/or Transfer
to Supreme Court Denied
July 12, 1985.

Application to Transfer Denied
Sept. 10, 1985.

Daniel J. Gralike, Dorothy M. Hirzy, Public Defender, St. Louis, for defendant-appellant.

Leah A. Murray, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KELLY, Judge.

David C. McBurnett appeals his conviction of first degree assault, § 565.050, RSMo 1979,[1] and burglary in the first degree, § 569.160 after a jury trial in the Circuit Court of St. Louis County. The trial court, having found him to be a prior offender, § 558.016.2, and a dangerous offender, § 558.016.4, RSMo 1978, sentenced him to the custody of the Missouri Department of Corrections and Human Resources for a period of twenty-five (25) years on the assault charge and a concurrent sentence of fifteen (15) years for the burglary offense. For reasons hereinafter stated we affirm.

On appeal no attack is made as to the sufficiency of the evidence to support the conviction of either offense. Viewed in a light most favorable to the State, the evidence was that Sharon Lambert, in February, 1983, resided with her family and an aunt at 110 East Holden in St. Louis County, Missouri. Her family consisted of her husband, four children, and an aunt. At approximately 3:00 a.m. on February 9, 1983, she was awakened by noises coming from the basement of her home. She thought it might be her daughter, Tina, so she called Tina's name several times. Each time the noises stopped momentarily, but then began again. Finally, Mrs. Lambert decided to call the police and after hanging up the telephone she attempted to scare-off the intruder by yelling that the police were on the way.

Robert Bauer, a St. Louis County police officer, was the first policeman to arrive on the scene. He took a flashlight and looked around the exterior of the house and the yard. He then went onto the front porch of the residence to knock on the front door of the Lambert home. When he arrived at the front door he heard heavy breathing coming from the floor of the porch. As he turned to investigate, a man holding a .38

---

1. All statutory references are to RSMo 1979    unless otherwise indicated.

caliber revolver stood up. The two men stood face to face for several seconds and when Bauer heard the gun in the hand of the other man cocked, he turned to run. A moment later the gun was fired and although the bullet from the gun did not strike Bauer he felt the muzzle blast. As he leaped off the side of the porch, Bauer glanced over his shoulder and saw the other man fleeing in the opposite direction. Bauer continued running until he reached his patrol car and saw Officer Wesley Smith of the Crime Scene Unit. Bauer related to Smith what had occurred. He and Smith searched the outside area of the Lambert premises but did not find the man nor did they recover the bullet fired from the gun.

Mrs. Lambert ascertained that nothing was missing. It was determined that a door on the west side of the porch leading into the rooms occupied by Mrs. Lambert's aunt had been opened about three inches, which was as much as a chain lock on the door would permit. She did not know whether this door was locked that night.

Further investigation showed that the door at the head of the stairs leading from the basement to the first floor of the Lambert house had a coat hanger jammed in it between the door and the door jamb, protruding into the interior of the house. That door was secured with a throw bolt which "slides in, and then you turn it down into a notch." The throw bolt was above a "handle" and the coat hanger was above the handle and between the handle and the throw bolt. When Officer Smith opened the basement door the coat hanger fell down into the basement where it was recovered.

Mrs. Lambert never saw the intruder and therefore could not furnish a description; however, Officer Bauer described the man he saw on the porch as a white male about 25 years of age, five feet eight to five feet ten inches tall, with dirty or dishwater blond hair, curly shoulder length, and wearing an army fatigue jacket which appeared to be about three to five sizes too large.

Two days after the incident, on February 11, 1983, two St. Louis County detectives visited Officer Bauer at his home where they showed him several photographs from which he identified appellant as the man he saw on the Lambert porch and who fired the gun on February 9, 1983. Officer Bauer also identified appellant again as the same man at a live line-up. At trial Officer Bauer identified the appellant as the man he saw on the Lambert porch and who fired the gun at him.

The evidence also developed that in February, 1983, appellant lived at 9444 South Broadway, three or four blocks from the Lambert home.

Appellant's first Point on Appeal is that the trial court erred in finding beyond a reasonable doubt that he was a prior offender and a dangerous offender pursuant to § 558.016, RSMo 1978. We disagree.

The state's evidence in support of this issue was a certified copy of a judgment and sentence form issued by the Circuit Clerk of the City of St. Louis. According to this document one "David *Curtis* McBurnett" had pled guilty in the Circuit Court of the City of St. Louis to a charge of robbery in the first degree by means of a dangerous and deadly weapon in April, 1976.

In this case appellant was charged under the name of "David C. McBurnett." Both at trial, and in this court, appellant contends there is no evidence that he was the same man who had been convicted in the City of St. Louis in April, 1976.

When defendant's first name and last name are the same as the first name and last name shown on the record of the previous conviction the state has made a prima facie showing of identity. *State v. Tygart,* 673 S.W.2d 83, 86[5] (Mo.App. 1984). A person's middle name has little, if any, legal significance. *State v. Cook,* 463 S.W.2d 863, 868[8] (Mo.1971). Neither in the trial court nor in this court has appellant claimed that he is not the "David Curtis McBurnett" who had pled guilty in the Circuit Court of the City of St. Louis to a

charge of robbery in the first degree by means of a dangerous and deadly weapon in April, 1976. A similar observation was made in *State v. Witt*, 371 S.W.2d 215, 220 (Mo.1963). We rule this point against appellant.

Appellant's next Point is that the trial court erred in refusing a tendered instruction on the lesser included offense of assault in the second degree § 565.060, RSMo 1978, since the evidence failed to establish an intent to kill or cause serious physical injury to Officer Bauer.

■■■ The trial court is not obliged to charge the jury with respect to a lesser included offense unless there is a basis for acquitting the defendant of the offense charged and convicting him of the lesser included offense. Section 556.046.2, RSMo 1978. The giving of instructions on lesser included offenses is required only if the evidence arguably shows a lack of an essential element of the greater offense. *State v. Howell*, 524 S.W.2d 11, 21[10] (Mo. banc 1975); *State v. Bigham*, 628 S.W.2d 681, 685[3] (Mo.App.1982). The statute providing that a trial court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting defendant of the offense charged and convicting him of a lesser included offense must be construed as requiring an instruction on a lesser included offense only where there is evidence of probative value which could form the basis of an acquittal of the greater offense and a conviction of the lesser included offense. *State v. Hill*, 614 S.W.2d 744, 749[6] (Mo.App.1981). Case law has consistently held that an instruction on a lesser included offense is required only where there is evidence with probative value which could form the basis of an acquittal of the greater offense and a conviction of the lesser included offense. *Hill*, supra, at p. 750.

■ As a general proposition, the trial court should resolve all doubts upon the evidence in favor of instructing on the lower degree of the crime, leaving it to the jury to decide of which grade of the offense, if any, the defendant is guilty. *State v. Ellis*, 639 S.W.2d 420, 422[4] (Mo. App.1982).

■ This conviction was brought under § 565.050.2,[2] in that appellant "attempted to kill or to cause serious physical injury to Robert Bauer by shooting at Robert Bauer." In *State v. Heitman*, 613 S.W.2d 902 (Mo.App.1981) the defendant pointed a pistol at a police officer and another police officer, believing the first police officer was in immediate danger of being shot by the defendant, fired two shots through a window striking the defendant, who fell to the floor and lost control of the pistol in his hand. The defendant's pistol was seized, and at that time it was examined and learned that the hammer was in a cocked position ready to fire, the gun was fully loaded and test firing disclosed it to be in operating condition. Under these circumstances, the court held the evidence was sufficient to establish intent to kill, although the defendant fired no shot prior to being shot by the other officer.

McBurnett did not testify or call any witnesses concerning the facts of the offense charged. There was no evidence from any source suggesting self-defense, justification or extenuating or mitigating circumstances. The natural consequence of using a deadly weapon is, at the very least, great or serious bodily harm. *Heitman*, supra, at p. 906[13]. We believe the firing of the gun at Officer Bauer was sufficient evidence of an intent on the part of the appellant to kill or to cause serious physical injury to Officer Bauer.

We hold there was no error in the trial court's refusal to instruct on the lesser included offense of assault in the second degree because there is no evidence of probative value forming the basis of an acquittal of the greater offense of assault in the first degree and conviction of the lesser

2. This section was amended by L.1983, p. 931 S.B. No. 276, § 1, but the amendment did not become effective until October, 1984. L.1984, p. 757, S.B. 448 A.

included offense of assault in the second degree. *State v. Hill*, supra.

Appellant's next point is that the trial court erred in refusing a tendered instruction on the lesser included offense of assault in the third degree, § 565.070, RSMo 1978. For the same reason we have found no error in the refusal of the trial court to submit an instruction on the lesser included offense of assault in the second degree as claimed by appellant in his second Point Relied On, we find no error in refusing the tendered instruction on assault in the third degree.

Appellant's final point is that the trial court erred in refusing a tendered instruction submitting the lesser included offense of trespass in the first degree, § 569.140.3, RSMo 1978, in that the evidence failed to establish the requisite intent to steal because nothing was disturbed or taken from the victim's house, and none of the residents had been in the basement for two (2) weeks.

■ Trespass in the first degree is a lesser or included offense of burglary in the first degree. *State v. Martin*, 624 S.W.2d 879, 882 (Mo.App.1981). Burglary requires that the unlawful entry have been made for the purpose of committing a crime therein, as in this case, stealing. Section 569.160.1, RSMo 1978. But the trial court did not err in refusing the tendered instruction on trespass in the first degree. Error occurs in failing to instruct on a lesser or included offense that is supported by the evidence. *State v. Smith*, 592 S.W.2d 165, [1] (Mo. banc, 1979); *State v. Martin*, supra, p. 883[11]. When there is strong and substantial proof of defendant's guilt of the offense charged however, and the evidence does not reveal a lack of an essential element of this more serious offense, an instruction on the lesser or included offense is unnecessary. *State v. Hill*, supra, 749[6].

Appellant argues that the state failed to prove that any goods, belongings or merchandise were stored in the dwelling which would have furnished a motive to steal. However, there was evidence that not only was the dwelling inhabitable, it was undisputed that at the time it was inhabited as a home by the Lambert family and an aunt as a residence. We conclude from this fact that the state made a prima facie showing that the dwelling-house contained items of value sufficient to establish appellant's intent to steal.

■ The prerequisite intent to steal in a burglary offense may be established by circumstantial evidence, and to establish such intent it is not necessary that the act of stealing be completed after the unlawful entry into the habitable building. *State v. Smith*, 357 S.W.2d 120, 123[5] (Mo.1962). The law in Missouri is clear that the unlawful entry into a building containing items of value is sufficient to demonstrate an intent to steal. *State v. Grayson*, 668 S.W.2d 153, 158[3] (Mo.App.1984); *State v. Cameron*, 604 S.W.2d 653, 662[31] (Mo.App.1980); *State v. Lawrence*, 566 S.W.2d 243, 246–247[8] (Mo.App.1978).

■ Furthermore, there is no evidence that appellant's presence in the basement of the home was for any other purpose. In fact there was evidence that he attempted to force his way into the first floor of the home from the basement by forcing open the bolt lock on the basement door with a coat hanger. Under the evidence there was no probative evidence to demonstrate a lack of an essential element of the crime of burglary in the first degree, nor was there any basis for acquitting appellant of burglary in the first degree and finding him guilty of trespass in the first degree. Thus, we hold there was no basis for the trial court to instruct the jury on first degree trespass. *State v. Howell*, 524 S.W.2d 11, 21[10] (Mo. banc 1975), *State v. Boyd*, 629 S.W.2d 434, 437[7, 8] (Mo.App. 1981). We rule this point against appellant.

Affirmed.

DOWD, P.J., and CRANDALL, J., concur.