

# IN THE
# TENTH COURT OF APPEALS

### No. 10-22-00179-CR
### No. 10-22-00180-CR

**JOHN WAYNE WILLIAMS, SR.,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 82nd District Court**
**Falls County, Texas**
**Trial Court Nos. 10207 & 10206**

## MEMORANDUM OPINION

John Wayne Williams, Sr., was convicted of two offenses of aggravated sexual assault of a child, *see* TEX. PENAL CODE § 22.021(a)(1)(B)(ii),(2)(B) and § 22.021(a)(1)(B)(iii), (2)(B), respectively, and sentenced to life in prison for both convictions. In the same two issues in both appeals, Williams contends the trial court erred in failing to grant Williams's requests, before and after the State rested its case-in-chief, to require the State to elect which acts of abuse it would rely on for its convictions. Because the trial court

either did not err or Williams was not harmed by the error, the trial court's judgments are affirmed.

**BACKGROUND**

Williams was charged with one act of aggravated sexual assault of a child by causing the penetration of the mouth of L.W., a child under 14 years of age, by the sexual organ of Williams (oral sex on Williams) (10-22-00179-CR) and one act of aggravated sexual assault of a child by causing penetration of the sexual organ of L.W., a child under 14 years of age, by Williams's tongue (oral sex on L.W.) (10-22-00180-CR).

L.W. turned 8 years old on April 12. By early May, she made an outcry of sexual abuse to her school bus driver.[1] In response to this outcry, L.W. was taken to the Waco Child Advocacy Center on May 10. There, L.W. told a forensic interviewer, that Williams had licked L.W.'s vagina. Six days later, L.W. told an examining doctor that, in addition to Williams licking L.W. "a lot of times," Williams told L.W. to put his penis in her mouth "a lot of times" and that L.W. complied with Williams's instruction on more than one occasion. L.W. told the doctor that the abuse happened when she was 8 years old, but did not know exactly when. L.W. also said that she thought the last time Williams "touched her middle spot" was in April, but was not sure.

By the time of the trial, L.W. was 12 years old. She testified that Williams licked her vagina and made her put his penis in her mouth. When asked about who she may have talked to about what had happened to her, L.W. stated that because of the years that

---

[1] The bus driver, although designated as an outcry witness, was not called to testify.

had passed, she was unable to recall "all the dates and details." L.W. stated she did not tell anyone about the "first time anything like this happened" because she did not want her "mom to get worried way too much."

During the trial, Williams requested, on three separate occasions, an election by the State of the act for each indictment on which it was relying for a conviction. Those requests were denied.

**ELECTION OF OFFENSES**

In the same two issues for each appeal, Williams contends the trial court erred in failing to grant Williams an in-trial election of offenses and in failing to grant Williams an election of offenses after all the parties had rested.[2]

Generally, when one particular act of sexual assault is alleged in the indictment and more than one incident of that same act of sexual assault is shown by the evidence, as is the case here, "the State must elect the act upon which it would rely for conviction." *Owings v. State*, 541 S.W.3d 144, 150 (Tex. Crim. App. 2017), quoting *O'Neal v. State*, 746 S.W.2d 769, 771 (Tex. Crim. App. 1988). *See Garcia v. State*, 614 S.W.2d 749, 753 (Tex. Crim. App. 2019). Before the State rests, the trial court has discretion in directing the State to make an election. *Garcia*, 614 S.W.2d at 753; *O'Neal*, 746 S.W.2d at 771. *See Porter v. State*, 298 S.W.3d 694 (Tex. App.—Waco 2009, pet. ref'd). But once the State rests its case in chief, upon a timely request by the defense, the trial court must order the State to make an election. *Owings*, 541 S.W.3d at 150; *O'Neal*, 746 S.W.2d at 771. *See Phillips v. State*, 193

---

[2] Even after being notified that its briefs had not been filed and warned that if briefs were not filed the cases would be submitted without its briefs, the State did not file a brief in either appellate case.

S.W.3d 904, 910 (Tex. Crim. App. 2006) (reaffirming *O'Neal*); *Dixon v. State*, 201 S.W.3d 731, 733-34 (Tex. Crim. App. 2006).

**Election During Case-in-Chief**

Williams first complains that the trial court erred in denying his two requests for an election in both cases during the State's case-in-chief. Williams first asked for an election after the completion of the testimony of the State's first two witnesses, Dr. Soo Battle, a board-certified pediatrician working at the Advocacy Center as a medical advisor and a child sexual abuse examiner, and Dr. William Lee Carter, a forensic psychologist. Battle spoke with L.W. about what had happened and physically examined L.W. Carter did not see L.W. as a patient and did not testify about any of the acts L.W. said happened to her. The second time William asked for an election was after the completion of the testimony of K.W. and L.W. K.W. is L.W.'s cousin who heard a conversation between two other cousins. The substance of the conversation was not made known to the jury.

We have said that to compel an election before the State rests, "the State's evidence must show a discrete, identifiable occurrence which fits within the allegations of the indictment." *Porter v. State*, 298 S.W.3d 694, 696 (Tex. App.—Waco 2009, pet. ref'd). "Generally, such showing will include a chronological component (e.g., the complainant may testify that the defendant assaulted him during the Thanksgiving holidays)." *Id.*

*—10-22-00179-CR*

In reviewing the testimony prior to both election requests, we found no discrete identifiable occurrence regarding the act of Williams forcing L.W. to perform oral sex on

Williams. Dr. Battle and L.W. both testified that Williams made L.W. perform oral sex on him on more than one occasion. There was no testimony isolating any particular instance of oral sex performed on Williams. Thus, we cannot say the trial court abused its discretion by not requiring the State to make an election at either time prior to resting its case.

### —10-22-00180-CR

In reviewing the same testimony but regarding Williams's act of performing oral sex on L.W., a discrete identifiable occurrence was shown. L.W. recounted an instance when her brother, J.W., walked into the garage, where all the acts of sexual abuse occurred, while Williams was performing an act of oral sex on L.W. She could see J.W. as he entered the garage and told Williams to stop because someone was coming. Although there was no chronological component as generally required, we find this instance to be sufficiently isolated to require the State to make an election before resting. Accordingly, the trial court abused its discretion by failing to require the State to make an election as to this offense before the State rested.

**Election after State Rests**

Williams next complains that the trial court erred in denying his request for an election in both cases after the parties had rested.

As we previously stated, once the State rests its case-in-chief, upon a timely request by the defense, the trial court must order the State to make an election. *Owings v. State*, 541 S.W.3d 144, 150 (Tex. Crim. App. 2017); *O'Neal v. State*, 746 S.W.2d 769, 771 (Tex. Crim. App. 1998. *See Phillips v. State*, 193 S.W.3d 904, 910 (Tex. Crim. App. 2006)

(reaffirming *O'Neal*); *Dixon v. State*, 201 S.W.3d 731, 733-34 (Tex. Crim. App. 2006). But Williams did not request an election at the close of the State's case. Instead, Williams waited to move for an election until the close of *all* the evidence. The question, then, is whether Williams's request for election was timely, as required by the rule as announced in *O'Neal*. *See Phillips*, 193 S.W.3d at 912; *O'Neal*, 746 S.W.2d at 771.

Certainly, if Williams had asked for an election at the close of the State's evidence, the trial court would have been obligated to require the State to elect at that time. But, because he waited until the close of all the evidence, Williams was not entitled to an election at the close of the State's evidence. *See Phillips*, 193 S.W.3d at 912. Nevertheless, he was still entitled to a unanimous verdict, and he preserved his right to a unanimous verdict by calling for an election at the close of all the evidence. *Id.* Therefore, Williams's request was timely insofar as he was entitled to a unanimous jury verdict, and the trial court had an obligation to require the State to elect at that point in time. *Id.*

## HARM ANALYSIS

We must now decide whether the error harmed Williams, *i.e.* whether it contributed to Williams's conviction or punishment. *See* TEX. R. APP. P. 44.2(a); *Dixon v. State*, 201 S.W.3d 731, 734 (Tex. Crim. App. 2006); *see also Phillips*, 193 S.W.3d at 913-14. Harm is determined by analyzing the four purposes of the election rule: (1) to protect the accused from the introduction of extraneous offenses; (2) to minimize the risk that the jury might choose to convict, not because one or more crimes were proved beyond a reasonable doubt, but because all of them together convinced the jury the defendant was guilty; (3) to ensure unanimous verdicts, that is, all of the jurors agreeing that one specific

incident, which constituted the offense charged in the indictment, occurred; and (4) to give the defendant notice of the particular offense the State intends to rely upon for prosecution and afford the defendant an opportunity to defend. *Owings v. State*, 541 S.W.3d 144, 150-51 (Tex. Crim. App. 2017). *See Phillips*, 193 S.W.3d at 910.

Because Williams is entitled to a unanimous verdict in case number 10-22-00179-CR, we will join that case number in the harm analysis when we analyze the unanimous verdict purpose.

### —10-22-00180-CV (oral sex on L.W.)

#### *Protection from Extraneous Offenses*

Evidence of other crimes, wrongs, or acts committed by the defendant against the child victim is admissible for purposes of showing: (1) the state of mind of the defendant and the child; and (2) the previous and subsequent relationship between the defendant and the child. TEX. CODE CRIM. PROC. art. 38.37. Because evidence about the other offenses was admissible, Williams was not entitled to protection from their introduction as evidence of extraneous offenses involving L.W. *See id.*; *see also Dixon v. State*, 201 S.W.3d 731, 734-35 (Tex. Crim. App. 2006).

#### *Risk of Conviction*

We see no risk that the jury found Williams guilty of an offense other than the one for which he was charged that was not proven to its satisfaction beyond a reasonable doubt. As the Court in *Dixon* said, "[t]his case is not concerned with evidence of different activities from different sources that a jury might perceive to 'add up' to the defendant being guilty even though no individual offense was proven beyond a reasonable doubt."

*Dixon*, 201 S.W.3d at 735. Here, L.W. was the only source of the evidence of the offense charged in 10-23-00180-CR and committed by Williams, and she provided a sequence of events that occurred for the offense and stated that these incidents occurred "a lot of times" in the garage at Williams's house when L.W. was 8 years old. L.W. was 8 years old only for a short time before she made her outcry. She was either credible or she was not and the number of times that each offense occurred does not impact her credibility. *See id*. Thus, we cannot say that the jury convicted Williams for any reason other than the offense was proved beyond a reasonable doubt.

### *Notice of Particular Offense*

We also cannot say that Williams was deprived of adequate notice of, or an opportunity to defend against, the instances due to the trial court's error. All of the incidents were presented with equal specificity. With the exception that J.W. walked in on one of the incidents of Williams performing oral sex on L.W., and that those incidents occurred in a few different locations in the garage, there was no substantive distinction between L.W.'s account of each instance. *See Dixon*, 201 S.W.3d at 736; *Jackson v. State*, 2008 Tex. App. Lexis 6715 *17 (Tex. App.—Waco, Sept. 3, 2008, pet. ref'd) (not designated for publication). Further, Williams's defensive strategy was to attack the credibility of the State's witnesses, especially L.W., and question the State's motives in the presentation of its case and the witness's motives for testifying. Thus, we are not convinced that if the trial court had put the State to its election at the appropriate time, Williams's defensive strategy would have been meaningfully different. *See Garcia v. State*, 614 S.W.3d 749, 758-59 (Tex. Crim. App. 2019).

### ─ Both Appellate Cases

#### *Unanimous Verdict*

Likewise, we are not convinced the trial court's failure to require an election by the State resulted in a non-unanimous verdict. There is no basis in the record for the jury to believe that one incident occurred and another did not. Thus, it is unlikely there was any danger that some jurors might have believed that one incident occurred and another or others did not. Further, although there were two notes sent out by the jurors, neither indicated the jury was not unanimous about which incident was the charged offense. We find, therefore, that the jurors would not have convicted Williams without unanimously believing that he committed the offenses charged and described by L.W. Thus, we are satisfied that, despite the trial court's failure to require an election by the State, there is no significant risk of a non-unanimous verdict for either charge of aggravated sexual assault. *See Owings v. State*, 541 S.W.3d 144, 152-53 (Tex. Crim. App. 2017).

#### *Conclusion*

Based on our review of the record, we find the trial court's failure to require the State to make an election did not contribute to Williams's conviction or punishment. *See* TEX. R. APP. P. 44.2(a). Thus, Williams was not harmed by the trial court's error, and his issues are overruled.

#### CONCLUSION

Having overruled Williams's issues in each appeal, we affirm the trial court's judgments.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Johnson,* and
      Justice Smith
      *(Justice Johnson concurs only in the judgment.)
Affirmed
Opinion delivered and filed April 25, 2024
Do not publish
[CRPM]

